IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARK WAGNER,

    Plaintiff,

v.

SEA ESTA MOTEL I, MARSHALL
HOTELS & RESORTS, INC., CAROLYN
A. METZ, and GEORGE METZ, III,

    Defendants.

Civil Action No. 13-81-RGA

## MEMORANDUM ORDER

The Court **DENIES** the Sea Esta Defendants' Motion in Limine to preclude admissibility of evidence relating to the loss of the wooden railing and **GRANTS** plaintiff's request for an adverse inference with respect to the destruction of the wooden railing from the Sea Esta Motel I, the central piece of physical evidence in this case, based on spoliation. The reasons for this decision are as follows:

The Sea Esta Defendants' insurance carrier[1] permitted the railing and fasteners at issue in this motion to be auctioned off despite a request from plaintiff's attorney to preserve this evidence and numerous communications from the storage facility warning the insurance carrier that its storage unit would be auctioned off if payment was not received.

As the Third Circuit has explained, spoliation arises where: "the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been

---

[1] The insurance carrier is ultimately responsible for any damages award against the Sea Esta Defendants. It is also worth noting that the facts do not implicate either the Sea Esta Defendants themselves, or their counsel, in the failure to preserve the railing.

1

actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). Parties who breach this duty, either by destroying evidence or allowing evidence to be destroyed, may be sanctioned by the Court. *In re Wechsler*, 121 F. Supp. 2d 404, 415 (D. Del. 2000). If the destruction is in bad faith, the Court may impose the most severe sanction, dismissal of the claim. *Id.* The Court looks to three factors when determining whether to impose a sanction for the spoliation of evidence:

1) the degree of fault of the party who altered or destroyed the evidence;

2) the degree of prejudice suffered by the opposing party; and

3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994). Despite these factors, there can be no unfavorable inference if the evidence is "lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995).

It does not appear that the factors required to establish spoliation are disputed. Nonetheless, I will briefly address each of them to complete the record. First, the evidence was indisputably in the control of the Sea Esta Defendants' insurance carrier as it was placed in a storage facility paid for by the insurance company. (D.I. 129-5 (Tab 1 to Sea Esta Defendants' Motion in Limine)). Second, the missing evidence is relevant—it is the wooden railing that gave way when plaintiff leaned on it, causing him to fall three stories and suffer the injuries at the center of this litigation. Third, there has been actual suppression or withholding of evidence; the

railing is gone.[2] Finally, the duty to preserve the evidence was reasonably foreseeable because plaintiff's attorney sent two separate emails requesting that this critical evidence be preserved. (D.I. 129-5 (Exhibit A to Plaintiff's Response)).

Based on this evidence, I conclude that spoliation has occurred, and my analysis turns to the determination of the appropriate sanction using the *Schmid* factors. Under the first factor, the degree of fault of the party who destroyed the evidence, I find resoundingly in the plaintiff's favor. The railing system at issue here was destroyed—auctioned off by the storage facility— because the Sea Esta Defendants' insurance company repeatedly failed to pay the monthly rent for storage. This occurred despite the fact that the storage facility sent the insurance company numerous past due notices, issued a notice of lien in June 2012, and called twice, in August and September of 2012, to inform it that the unit's rent was past due and its contents would be auctioned if payment were not received. (D.I. 137-1; D.I. 137-2). This conduct is intolerable.

The degree of prejudice suffered by the opposing party, the plaintiff, also supports an adverse inference instruction. The plaintiff alleges that: the wooden railing, posts, and fasteners where plaintiff fell were rotted and deteriorating; the defendants should have been aware of this dangerous condition; and the defendants did not act prudently and with reasonable care in keeping the premises safe for guests. The defendants contest each of these points. Although the plaintiff has pictures of the railing, posts, and fasteners where he fell, that is no substitute for being able to present the jury with the actual wooden railing for them to see in person. The disappearance of the railing has thus prejudiced the presentation of plaintiff's case.[3]

---

[2] To the extent it is necessary to support a finding of spoliation, I conclude that the insurance company's repeated failures to respond to notices regarding the looming auction of its unit's contents establishes that the insurance company's actions were intentional. (D.I. 137-1 (detailing communication attempts made by storage facility with the insurance company, including multiple late payment notices, notice of lien, and two phone calls prior to the auction)).

[3] Plaintiff is seeking punitive damages. The actual railing would have been a powerful piece of evidence in support of that argument. The photographs do not have the same impact.

3

The final prong, the availability of lesser sanctions that will achieve the same deterrent effect, also weighs in favor of granting an adverse inference instruction here. An adverse inference instruction is a mild sanction compared to the alternatives, such as judgment against the spoliating party, suppression of evidence, fines, or a dismissal of the spoliating party's claim. Moreover, the offending party, in my view, is seriously at fault for losing the railing, and its conduct is deserving of a sanction. If the Court declined to impose a sanction here, it would serve to give future litigants an implicit stamp of judicial approval to engage in similar conduct.[4] It cannot be the case that a party can promise to preserve critical evidence, take possession of that evidence, and later allow it to be destroyed due to an inexcusable failure to act. In my opinion, no lesser sanction will avoid substantial unfairness to the plaintiff while at the same time preventing analogous conduct in the future.

Nonetheless, Third Circuit law is clear: "No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Brewer*, 72 F.3d at 334; *Bull*, 665 F.3d at 79 ("[A] finding of bad faith is pivotal to a spoliation determination."). The circumstances here do not indicate that the evidence has been lost or accidentally destroyed. In the face of persistent notices and attempts to elicit monthly rent payments for the storage unit, the Sea Esta Defendants' insurance carrier refused to act. Missing a notice or filing a payment late happens, and if the railing had been lost because of a single mishap along these lines I might be willing to find that the loss was accidental. How an insurance carrier involved in litigation can ignore countless notices and several phone calls warning of the lack of payment and attendant consequences for a piece of evidence in that same

---

[4] I expect insurance companies follow what happens in litigation involving other insurance companies, and thus the impact on the behavior of future litigants is a real concern.

4

litigation, however, is baffling. I am left to conclude that its lack of action can only be the result of bad faith.[5] The insurance company's conduct, therefore, supports a finding of spoliation and an adverse inference instruction.[6]

Entered this 26th day of August, 2014.

*[signature]*
United States District Judge

---

[5] I vacillated regarding whether the plaintiff would be able to make out a case for bad faith during the pre-trial conference. Upon further examination of the insurance company's utter disregard for the notices and phone calls regarding the storage unit, I am convinced that bad faith was at play.

[6] In a previous decision, I determined that the Third Circuit case law could support an adverse inference instruction based on a finding that a party was willfully blind to the destruction of evidence. *See Robocast, Inc. v. Microsoft Corp.*, 2014 WL 789086, at *2 (D. Del. Feb. 24, 2014). The facts in *Robocast* did not rise to the level of bad faith or willful blindness, however, and I declined to give a spoliation instruction in that case. *Id.* By contrast, the facts of this case are sufficient to conclude that the insurance company was not only willfully blind, but indeed acting in bad faith.